We are thus brought back to the consideration of the right of Mrs. Hawes, executrix, to participate, with the three other creditors named above, in this final distribution. We have heretofore held that she was not so entitled, and that determination was founded upon the construction we gave to certain exceptions she filed which we did not regard as sufficient, but which, if sufficient, were in time. On a reconsideration of this subject, we are led to the belief that too narrow a construction was given to her exceptions. It is true that the position taken by her was one of insistency upon her right as a preferred creditor, and that in the exceptions filed by her she did not claim to rank as an unpreferred creditor, and did not specifically assert her rights as such, but she did, in fact, file some exceptions. She excepted and objected as matter of fact, as well as matter of law, to the allowance of interest on the claims of preferred creditors, so far as that might prevent the payment in full of her two preferred claims, and until they should be first paid to her as executrix. That exception does not technically raise the objection that the preferred creditors were not entitled to interest at all, and hence we spoke generally of her not having filed exceptions; but it does indicate that the exceptant's view was that interest to such preferred creditors was to be postponed until after her superior preferred claims were allowed and paid, and yet, by a broader and more equitable construction, it may be regarded that it was open to her to argue that the preferred creditors were not entitled to interest, or, in other words, that the whole subject of interest was brought up for consideration. Mrs. Hawes was represented before the referee on all the hearings. She was contesting the right of other preferred creditors to rank either above or in equality with her, and, in that position of antagonism to them, on further reflection we think that her exception may be deemed sufficient. It is not too late to rectify the mistake which has operated to the prejudice of Mrs. Bauer as executrix. The denial of the motion made on her behalf to resettle the order of April 11, 1902, or for leave to go to the Court of Appeals, are not estoppels upon her.

The order appealed from should be modified by admitting Mrs. Hawes, as executrix, to participate with the other three unpreferred creditors in the distribution of $59,987.95, and as thus modified affirmed, without costs.

INGRAHAM, McLAUGHLIN, and LAUGHLIN, JJ., concur. VAN BRUNT, P. J., concurs in result.

---

(41 Misc. Rep. 295.)

### TOWNSEND v. ONEONTA, C. & R. S. RY. CO.

(Supreme Court, Special Term, Otsego County. August, 1903.)

1. RECEIVER—APPOINTMENT—SERVICE ON ATTORNEY GENERAL.

    Where a Deputy Attorney General has admitted, at his own private residence, due personal service of motion papers prior to an order appointing a temporary receiver of a railroad, jurisdiction is acquired as against the Attorney General, though the appearance of the attorney was not authorized by the Attorney General.

2. SAME.

The only remedy of the Attorney General, if aggrieved by jurisdiction acquired over him by service of motion papers on a Deputy Attorney General, is by motion to vacate.

Action by Lucius H. Townsend against the Oneonta, Cooperstown & Richfield Springs Railway Company. Motion by the Attorney General to vacate an order appointing a receiver in a judgment creditor's action. Original hearing reopened.

See 83 N. Y. Supp. 1034, and 84 N. Y. Supp. 119.

Among the papers filed was the following admission of service indorsed upon the order to show cause, and the papers upon which it was founded: "Due, timely, and personal service of the within is hereby admitted. Appearance waived. John Cunneen, Attorney General, by James E. Rafter, Deputy." Thereupon an order was made appointing a temporary receiver. July 17th the Second Deputy Attorney General applied for an order to show cause why the order thus granted should not be vacated, upon the ground of irregular service of papers upon the Attorney General, and the unauthorized appearance of counsel for him. The moving papers consisted of the affidavit of the second deputy to the effect that no deputy, as such, had authority to sign the Attorney General's name to an admission of service of this nature outside of the Attorney General's office. It also appeared by the affidavit of the deputy who had admitted "due service" in the name of his principal that the papers were served upon him at his home, in Mohawk, and that he had not authorized any one to represent the Attorney General at the hearing, but he did not state that he had signed the Attorney General's name without permission or authority. On the hearing of the order to show cause why the order of July 4th should not be vacated, the court required counsel to file the affidavit of the Attorney General to the effect that the deputy had used his name without permission or authority. Thereafter the Attorney General filed an affidavit in which he stated that "I did not give Mr. Rafter authority to sign an admission of service of papers when absent from the office of the Attorney General in the capitol.".

George F. Slocum, Dep. Atty. Gen., for the motion.
A. R. Gibbs, Alva Seybolt, and A. M. Sanders, opposed.

MATTICE, J. The appearance by a responsible attorney for the Attorney General, and the filing of a written admission of service in the name of the Attorney General by his deputy, conferred jurisdiction upon the court, although the appearance was unauthorized, and the deputy exceeded his authority in the use of his principal's name. This is so upon grounds of public policy; otherwise the court would never know when jurisdiction was obtained, unless the present practice of recognizing the authority of counsel, upon his appearance in court, should be superseded by a rule requiring all attorneys to furnish, under oath, satisfactory and sufficient evidence of authority.

The order thus made upon such unauthorized appearance could not be disregarded or attacked collaterally. The direct motion in the action made by the Attorney General for relief is therefore the only resort. Upon the hearing of this motion to vacate, it is shown to my satisfaction that the attorney appeared without authority, and I am satisfied that service upon the Deputy Attorney General at a place other than the Attorney General's office is irregular. The Attorney General would therefore be entitled to an order vacating the previous order, or to have the hearing opened, and he be given

an opportunity to defend upon the merits, but for the fact that upon the record stands the admission in the name of the Attorney General of the "due, timely, and personal service" of the papers. The irregularity in the service of papers is thereby waived, and it is of no moment that an attorney without authority had his formal appearance noted upon the hearing. If the Attorney General shall choose to file and serve his affidavit to the effect that he disaffirms the act of his deputy in signing his name, and that such act was without his permission and authority, the hearing upon the motion for a receiver made July 4th may be opened, and the Attorney General permitted to be heard upon the merits of the application.

As the receiver has already qualified, giving the bond required, taken possession of the assets of the defendant, brought an important suit affecting the title to a large number of bonds, and is operating the road, I do not deem it wise to vacate the order appointing him, and require the plaintiff to bring proceedings de novo. I conclude that the rights of all parties can be protected by opening the original hearing.

Ordered accordingly.

---

(41 Misc. Rep. 298.)

### TOWNSEND v. ONEONTA, C. & R. S. RY. CO.

(Supreme Court, Special Term, Otsego County. August, 1903.)

1. RECEIVER—REMOVAL.

Where the appointment and subsequent conduct of a temporary receiver of a railroad corporation were satisfactory to all parties in interest, except one claiming to be a majority bondholder, he will not be removed, where title of the objecting party to the bonds was contested by the receiver, and the bonds were claimed to belong to the corporation itself.